UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERMAINE MICHAEL DEAN,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>DR. R.Y. ZHANG, et al.,<br><br>　　　　　　　　Defendants. | Case No.: 24-cv-00413-RSH-JLB<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>**[ECF No. 34]** |

Before the Court is a Motion to Compel filed by Plaintiff Jermaine Michael Dean ("Plaintiff"). (ECF No. 34.) Defendant Dr. R.Y. Zhang ("Defendant") filed an opposition. (ECF No. 36.) For the reasons set forth below, the Court **DENIES** Plaintiff's Motion to Compel.

**I.　BACKGROUND**

On February 28, 2024, Plaintiff, a state prisoner incarcerated at the R.J. Donovan Correctional Facility ("RJD") in San Diego, California, proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 accompanied by a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF Nos. 1–2.) On March 1, 2024, he filed a First Amended Complaint ("FAC") accompanied by a second motion to proceed IFP. (ECF Nos. 4–5.) Plaintiff claimed the named defendants, his personal care physician ("PCP") at RJD Dr. Zhang, RJD Chief Medical Officer

Dr. Roberts, and John and Jane Does 1–100 members of the RJD committee who approve surgeries, violated his Eighth Amendment right to adequate medical care by causing a delay in surgery for a torn bicep. (ECF No. 4 at 2–10.)

On March 19, 2024, the Court granted Plaintiff leave to proceed IFP and screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). (ECF No. 7.) The Court found Plaintiff had failed to plausibly allege an Eighth Amendment claim against any defendant because he failed to set forth sufficient factual allegations that any defendant was deliberately indifferent to his serious medical need for surgery, as opposed to alleging at most negligence or medical malpractice. (*Id.* at 5–8.) Plaintiff was notified of the deficiencies of his pleading, granted leave to amend, and informed that any defendant not re-named and any claims not re-alleged in his amended complaint would be waived. (*Id.* at 8–9.)

On April 26, 2024, Plaintiff filed a Second Amended Complaint ("SAC"), the operative complaint, naming Dr. Zhang as the sole defendant. (ECF No. 8.) In the SAC, Plaintiff alleges that on January 11, 2021, while housed at RJD, he requested medical attention for a painful injury to his left bicep. (*Id.* at 3.) On January 26, 2021, he was seen by a nurse, who recommended he see his PCP, defendant Dr. Zhang. (*Id.*) On February 2, 2021, Defendant examined Plaintiff and diagnosed him with a ruptured tendon in his left bicep. (*Id.*) Plaintiff contends Defendant could have sent him to an outside hospital for emergency surgery, as he had in the past with other inmates, but instead referred Plaintiff for a surgical consultation with Dr. Roberts, the Chief Medical Officer at RJD, who "put [his file] on the stack of medical requests." (*Id.* at 3–4.) As a result, Plaintiff's surgery was delayed until about six months after the initial injury. (*Id.*) Plaintiff alleges Tri-State Hospital cleared him for surgery on February 28, 2021, but it took until June 18, 2021, for the RJD committee to approve his surgery. (*Id.* at 7.) During this delay, his tendon healed improperly and shrank, preventing it from being reattached in a way that did not leave his bicep looking disfigured and causing possible future ulnar nerve damage at the elbow. (*Id.* at 4.)

  Plaintiff claims Defendant referred him to the RJD committee rather than ordering him out for emergency surgery, as he had done for two white inmates "and others," because of racial bias against Plaintiff, who is Black, and because Defendant benefitted financially from doing so. (*Id.* at 3–5.) In support of that allegation, Plaintiff attaches to the SAC a declaration from Dale Calvin Whitmer who states that in 2022 he witnessed a white inmate named Derrick rupture "his tendon in much the same way I could ascertain [Plaintiff] ruptured his," and who was immediately taken to an outside hospital for emergency surgery and who now has no apparent deformity or any difference in his bicep from before it was injured. (ECF No. 8-1 at 67–68.) Mr. Whitmer states that he himself was injured on November 18, 2018, "at which time I was taken out on an emergency evacuation to the hospital, in much the same way [as] Derrick, receiving medical care." (*Id.* at 68.) He states that during his treatment, RJD PCP Dr. Goldseth informed him that RJD PCPs receive a financial benefit from referring inmates to the surgical committee. (*Id.*) He also states that it appears to him that white inmates receive better medical care than Black inmates. (*Id.*)

  Plaintiff's allegations in the SAC were found to be sufficient to survive the "low threshold" of the screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b) with respect to an Eighth Amendment claim against Defendant. (ECF No. 9 at 6.) Accordingly, the U.S. Marshals were ordered to effect service on Defendant. (*Id.*) On July 16, 2024, Defendant filed an answer. (ECF No. 14.) An Early Neutral Evaluation Conference was held on August 26, 2024. (ECF No. 19.) The case did not settle. (*Id.*) The Scheduling Order was issued the following day, setting a fact discovery deadline of January 27, 2025, and an expert discovery deadline of May 19, 2025. (ECF No. 20.)

## II. LEGAL STANDARD

  The Federal Rules of Civil Procedure authorize parties to obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden

or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Rule 26(b) requires a district court to "limit the frequency or extent of discovery" if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Courts "must consider both relevance and proportionality in determining whether the scope of discovery that a party seeks is appropriate." *BlackBerry Ltd. v. Facebook, Inc.*, No. CV 18-1844-GW (KSX), 2019 WL 4544425, at *6 (C.D. Cal. Aug. 19, 2019). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

On a motion to compel, the moving party bears the burden of demonstrating relevance, proportionality and other Rule 26 requirements. *Shared P'ship v. Meta Platforms, Inc.*, Case No. 22-cv-02366-RS (RMI), 2023 WL 2526645, at *3 (N.D. Cal. Mar. 14, 2023) (citation omitted). The party resisting discovery "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Weinstein v. Catapult Grp.*, Inc., No. 21-CV-05175-PJH, 2022 WL 4548798, at *1 (N.D. Cal. Sept. 29, 2022) (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998)).

### III. DISCUSSION

#### A. Timeliness

Defendant argues that Plaintiff's motion to compel is untimely. (ECF No. 36 at 5.) Pursuant to the Scheduling Order issued in this case, all interrogatories, requests for admission, and document production requests were required to be served by all parties by November 25, 2024. (ECF No. 20 ¶ 4.) On December 8, 2024, thirteen days after the deadline, Plaintiff served Defendant with his first set of RFPs. (ECF No. 36-2 at 3–5.) In

RFP No. 1, Plaintiff requested a "copy of Defendant's record of investigations and complaints filed against the Defendant regarding medical issues that have occurred during his employment with the California Department of Corrections and Rehabilitation." (*Id.* at 3.)

On January 10, 2025, Defendant served objections to Plaintiff's first set of RFPs. (*Id.* at 8–10.) Defendant objected to RFP No. 1 on the grounds of timeliness. (*Id.* at 9.) Defendant further objected on the basis that it was vague and ambiguous, unduly burdensome, overbroad in time and scope, and sought irrelevant information. (*Id.*) To the extent the RFP called for confidential documents, Defendant asserted the official information privilege and privacy concerns. (*Id.* at 9–10.) Defendant stated that he would not produce any documents in response to the request. (*Id.* at 10.)

On January 28, 2025, Plaintiff attempted to obtain copies of complaints against Defendant through a California Public Records Act request. (ECF No. 34-1 at 2–3.) On February 17, 2025, Plaintiff made an additional California Public Records Act request for the complaint and disciplinary history of Bennett Feinberg, M.D., Defendant's designated expert in this case. (*Id.* at 5.) On February 25, 2025, California Correctional Health Care Services ("CCHCS") denied Plaintiff's request for records relating to Defendant and Dr. Feinberg, stating, "[T]he information you are requesting is exempt from release via the California Public Records Act." (*Id.* at 6–8.) CCHCS directed Plaintiff to the California Department of Consumer Affairs, Medical Board of California, for information regarding complaints against the medical licenses of Defendant and Dr. Feinberg. (*Id.*) On March 9, 2025, Plaintiff appealed CCHCS's denial. (*Id.* at 9–10.)

On May 6, 2025, Plaintiff filed a request to meet and confer with Defendant regarding his intent to request the "reopening of [] discovery" and to seek "an order compelling discovery in order to obtain facts for cross examination of Defendant's Expert Witness, and at the same time, if possible, gain the requested documents on the Defendant Zhang." (ECF No. 25.) Defendant filed a response to Plaintiff's request, stating that Defendant had arranged a telephonic meet and confer to occur on May 9, 2025. (ECF No.

26.) Defendant later left a voicemail with Judge Burkhardt's Chambers indicating that the meet and confer was unsuccessful in resolving the dispute. (ECF No. 33.) Accordingly, this Court set a briefing schedule on the present motion to compel. (*Id.*)

Plaintiff served his second set of RFPs on May 11, 2025. (ECF No. 36-2 at 18.) In his second set of RFPs, Plaintiff again sought discovery related to grievances and complaints lodged against Defendant concerning any mistreatment of inmates. (*Id.* at 14–15.) At the same time, Plaintiff served on Defendant a "Request for Discovery/Production of Documents" pursuant to Rule 34 of the Federal Rules of Civil Procedure seeking discovery related to Dr. Feinberg. (*Id.* at 16–17.) Per the Scheduling Order in this case, expert discovery closed on May 19, 2025. (ECF No. 20 ¶ 7.) On June 9, 2025, Defendant mailed Plaintiff a letter stating he would not respond to the second set of discovery requests because they were untimely and because Dr. Feinberg is not a party to this action. (ECF No. 36-1, Declaration of S. Gray Gilmor ("Gilmor Decl.") ¶ 7.)

Given the foregoing, the Court finds the present dispute untimely as to Defendant, as Plaintiff did not serve his discovery requests in a timely manner in accordance with the deadlines set forth in the Scheduling Order. (*See* ECF No. 20.) In addition, Plaintiff did not bring his dispute concerning Defendant's response to the Court in a timely manner. Plaintiff served his first set of RFPs on Defendant in December 2024, Defendant objected in January 2025, and Plaintiff did not raise a dispute concerning Defendant's response before the undersigned magistrate judge until May 2025. (*See id.* at 3 ("**All discovery disputes must be raised within 30 calendar days of the service of an objection, answer, or response** that becomes the subject of dispute, or the passage of a discovery due date without response or production, and only after counsel (and any unrepresented parties) have met and conferred to resolve the dispute."); J. Burkhardt's Civ Chambers R. § V.) However, as Plaintiff is proceeding *pro se* and *in forma pauperis*, the Court will address the substance of Plaintiff's motion to compel responses from both Defendant and Dr. Feinberg.

///

**B.     Analysis**

      **1.**     Complaints in Defendant's File

In his second set of RFPs, Plaintiff requested the following:

> Any and all grievances, complaints, or other documents received and or included within the Employee's R.Y. Zhang's Central File/Employee File, received by prison staff or his agents at Richard J. Donovan Correctional Facility concerning the mistreatment of inmates by Defendant R.Y. Zhang, and any memoranda, investigative files, or other documents created in response to such complaints, since 01/01/2021 through 01/01/2025.

(ECF No. 36-2 at 14.)

Defendant did not respond to Plaintiff's second set of RFPs because they were untimely. (ECF No. 36 at 3; Gilmor Decl. ¶ 7.) In opposition to Plaintiff's motion to compel, Defendant argues that even if Plaintiff's requests were timely, "any grievances—if they exist—are irrelevant to the claims and defenses in this case and protected from disclosure." (ECF No. 36 at 8.) Defendant asserts that any grievances and corresponding investigative documents are privileged under the official information and privacy privileges. (*Id.* at 9.) Defendant further notes that healthcare grievances filed by third-party inmates would contain sensitive medical information. (*Id.*) Defendant argues that not only are third-party inmates entitled to privacy but disclosing them could chill inmates from using the grievance process. (*Id.*)

Plaintiff argues that the requested documents are relevant to his claim that Defendant "violated his constitutional right for adequate medical care with deliberate indifference by untimely providing surgery resulting in a chronic condition . . . , all resulting from Defendant['s] choice of routing Plaintiff's surgical approval through an illegal Utilization Review System, whose sole purpose is to limit medical services, especially in . . . [s]urgical [s]cheduling." (ECF No. 34 at 5.) Plaintiff claims he does not seek personnel records, but copies of "complaints and allegations." (*Id.* at 8–9.) He also asserts that the requested documents will include evidence of Defendant's "racial based bias[] towards Black inmates." (*Id.* at 9.)

In his SAC, Plaintiff alleges that Defendant's decision to route Plaintiff for surgical approval through RJD-MURS rather than send him immediately out for emergency surgery was motivated either by financial concerns or racial bias. (SAC at 3–9.) In support of his allegations, Plaintiff attaches a declaration from another inmate, Dale Calvin Whitmer, who states that he personally witnessed a white inmate who ruptured his tendon in much the same way as he could ascertan Plaintiff ruptured his tendon be taken immediately to an outside hospital for emergency surgery. (SAC, Ex. A, at 67–69.) Mr. Whitmer also stated that an RJD PCP informed him that doctors receive a financial benefit for referring their patients through RJD-MURS for their evaluation and decisions pertaining to medical treatments, especially surgeries. (*Id.* at 68.)

To establish deliberate indifference to serious medical needs, Plaintiff must show that Defendant's "response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Id.* (citing *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1991)*, overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (quoting *McGuckin*, 974 F.2d at 1059).

      a.    *Relevance*

The Court finds that Plaintiff has not established the relevance of "any and all" complaints and grievances filed against Defendant concerning any alleged "mistreatment of inmates." Not only is the request vastly overbroad as it seeks complaints and grievances beyond the scope of the instant matter, but Plaintiff has not established how Defendant's response to another inmate's serious medical needs is relevant to Defendant's decision to refer Plaintiff to RJD-MURS in this case based on his evaluation of Plaintiff's needs. The declaration attached to Plaintiff's SAC from Mr. Whitmer, who claims that "Derrick," a white inmate, received different medical care for a ruptured tendon than Plaintiff received,

does not establish relevance. First of all, Mr. Whitmer does not claim that it was Defendant who treated Derrick. Furthermore, neither Plaintiff nor Mr. Whitmer could possibly know the specific nature of Derrick's injury or what Derrick's immediate medical needs may have been.

Plaintiff therefore has not established that the discovery he requests is relevant and proportional to the needs of the case, rather than a mere fishing expedition. *See, e.g., Brook v. Carey*, 352 F. App'x 184, 185–86 (9th Cir. 2009) (finding the district court properly denied the prisoner plaintiff's motion to compel discovery of "[a]ny and all grievances, complaints, or other documents received by the defendants . . . concerning mistreatment of inmates" in a deliberate indifference to medical needs case as the "request was overbroad, immaterial to [the plaintiff's] particular circumstances, and overly burdensome to defendants"); *Valenzuela v. Smith*, No. S 04-0900 FCD DAD P, 2006 WL 403842, at *2, n.1 (E.D. Cal. Feb. 16, 2006), *adopted by* 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), *aff'd*, 249 F. App'x 528 (9th Cir. 2007) (denying request for all complaints and investigations against defendants to prove a pattern of medical indifference as overbroad and burdensome and for failure to show likelihood of leading to discoverable evidence); *Bovarie v. Schwarzenegger*, No. 08CV1661 LAB NLS, 2011 WL 719206, at *3 (S.D. Cal. Feb. 22, 2011) (noting that "[t]he facts and circumstances of each inmate's medical condition is different" in denying discovery for third-party medical records in deliberate indifference case).

Plaintiff further argues that the requested documents are relevant under Rule 404 of the Federal Rules of Evidence. (ECF No. 34 at 9–10.) Under Rule 404(b)(1), "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The request is denied to the extent it seeks impermissible character evidence.

To the extent the request seeks permissible evidence of motive,[1] the Court finds that any potential relevance is outweighed by the third-party inmates' right to privacy, as discussed below.

### b. *Third-Party Privacy*

Even if complaints and grievances lodged against Defendant by third parties have the potential to be minimally relevant to establish motive, the Court finds that determining whether Defendant acted with deliberate indifference in other cases would necessarily invade the privacy of third-party inmates. Plaintiff accuses Defendant of making medical decisions deliberately indifferent to Plaintiff's medical needs, motivated by racial bias and/or financial incentive. He hopes that through these discovery requests he can find evidence of Defendant making wrongful medical decisions through deliberate indifference to the medical needs of other inmates. Determining whether Defendant so acted in these other matters would first entail evaluating the appropriateness of his medical decisions under the specific medical circumstances of each patient.

The Ninth Circuit recognizes a constitutionally protected privacy interest in avoiding disclosure of private personal matters, including medical records. *See Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998); *see also Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 877 (9th Cir. 2008) *rev'd as to other matters*, 562 U.S. 134 (2011) ("We have repeatedly acknowledged that the Constitution protects an individual interest in avoiding disclosure of personal matters. This interest covers a wide range of personal matters, including . . . medical information . . . ." (internal citations omitted)); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022)

---

[1] *See George v. Sonoma Cnty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 937 (N.D. Cal. 2010) ("Evidence of an improper or ulterior motive can support a conclusion that a defendant failed to exercise sound medical judgment but instead acted with a culpable state of mind.").

("Individuals have a constitutionally protected interest in avoiding 'disclosure of personal matters,' including medical information."). Although that right is heavily circumscribed in prison,[2] it is also clearly established that "a prison inmate retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Turner v. Safley*, 482 U.S. 78, 95 (1987) (citation and internal quotation marks omitted); *see also Doe v. Beard*, 63 F. Supp. 3d 1159, 1166–67 (C.D. Cal. 2014).

The right of privacy is not, however, "an absolute bar to discovery and courts must balance the need for the information against the claimed privacy right." *Harris v. Kyle*, No. 1:19-cv-0462-DAD-EPG-PC, 2021 WL 195477, at *2 (E.D. Cal. Jan. 20, 2021) (citing *Allen v. Woodford*, No. CV-F-05-1104-OWW-LJO, 2007 WL 309485, at *5 (E.D. Cal. Jan. 30, 2007)); *see also Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995) ("Resolution of the privacy objection requires a balancing of the need for the information sought against the privacy right asserted."). Here, given the minimal potential relevance of the requested documents, the Court finds that the need for the requested information does not outweigh the right of third-party inmates to medical privacy.[3]

///

---

[2]     *See, e.g.*, *Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010) ("To the extent that [the plaintiff's] constitutional claim attacks disclosure while he was in prison serving his sentence and *for a penological purpose relating to his imprisonment*, [his] claim falls within the body of law regarding privacy for prisoners, the general principle being that whatever privacy right he has may be overridden *for legitimate penological reasons*." (emphasis added)).

[3]     This Court is not the proper forum, as Plaintiff urges, to appeal the State of California's denial of Plaintiff's Public Records Act requests. *See Lambert v. Weller*, No. C20-1558-JLR-MAT, 2021 WL 1393066, at *3 (W.D. Wash. Mar. 16, 2021), *adopted by* 2021 WL 1387661 (W.D. Wash. Apr. 12, 2021) (collecting cases). However, the Court notes that the requests were denied with citation to Cal. Gov't Code § 7927.700, which similarly prohibits the "disclosure of personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." (*See* ECF No. 34-1 at 6–8.)

      c.  *Official Information Privilege*

"Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990), *as amended on denial of reh'g* (Feb. 27, 1991), *as amended on denial of reh'g* (May 24, 1991). "Government personnel files are considered official information." *Id.* "To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." *Id.* at 1033–34.

A party claiming that information is privileged must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). In addition to a privilege log, a party seeking to invoke the official information privilege and prevent disclosure must submit an affidavit from a responsible official of the agency in control of the materials sought who has personal knowledge that includes the following:

> (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

*Soto*, 162 F.R.D. at 613 (citations omitted).

In this case, there is no indication that Defendant served a privilege log when responding to Plaintiff's first set of RFPs or included the requisite declaration. As a result, the Court is unable to assess Defendant's assertion of the official information privilege. The Court's order therefore does not rest on the application of this privilege.

Based on the foregoing, the Court denies Plaintiff's motion to compel his second set of RFPs directed to Defendant for lack of relevance and third-party privacy.

### 2. Complaints in Dr. Feinberg's File

In a separate discovery request, Plaintiff requested:

> Any and all grievances, complaints, or other documents received and or included within the Employee's Dr. Bennett Feinberg MD, CCHP's Central File/Employee File, received by prison staff or his agents at the California Department of Corrections and Rehabilitation and the CCHP concerning the mistreatment of inmates by Defendant's Expert Witness, Dr. Bennett Feinberg MD, CCHP and any memoranda, investigative files, or other documents created in response to such complaints, since the beginning of his employment, through 01/01/2025.

(ECF No. 36-2 at 16–17.)

Defendant did not respond to this discovery request because Dr. Feinberg is not a party to this action. (ECF No. 36 at 3; Gilmor Decl. ¶ 7.) In opposition to Plaintiff's motion to compel, Defendant argues that even if Plaintiff's requests were timely, this request is improper because Dr. Feinberg is not party to this action and Rule 34 is limited to party discovery. (ECF No. 36 at 9.) Defendant asserts that expert discovery is conducted through deposition and Plaintiff must pay fees related to a deposition. (*Id.* at 9–10.) Defendant further states that it has no authority to respond or produce personnel documents on behalf of Dr. Feinberg. (*Id.* at 10.)

As stated by Defendant, Rule 34 applies only to party discovery. *See* Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)[.]"). When an expert has been retained as a testifying witness, as is the case with Dr. Feinberg, the party's discovery must be conducted through deposition. Fed. R. Civ. P. 26(b)(4)(A); *see also Ransom v. Gray*, No. 07-CV-02340-IEG (WMC), 2009 WL 5184131, at *4 (S.D. Cal. Dec. 21, 2009), *aff'd*, 473 F. App'x 741 (9th Cir. 2012). For these reasons, Plaintiff's motion to compel a response to his RFP directed to Dr. Feinberg is **DENIED**.

///

///

## IV. CONCLUSION

Based on the foregoing, Plaintiff's motion to compel is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 13, 2025

_____
Hon. Jill L. Burkhardt
United States Magistrate Judge